# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0972V

|  |  |
|---|---|
| KATHALEEN LANG,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: January 27, 2025 |

*John Robert Howie, Howie Law, PC, Dallas, TX, for Petitioner.*

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On February 22, 2021, Kathaleen Lang filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA") following her receipt of an influenza ("flu") vaccine on September 4, 2020. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters, and although entitlement was conceded in Petitioner's favor, the parties could not agree to a damages figure, and their dispute was therefore submitted to resolution at a "Motions Day" proceeding on January 24, 2025.

---

[1] Because this Decision contains a reasoned explanation for the action taken in publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

**For the following reasons, I find that Petitioner is entitled to compensation of $64,372.78 (representing $64,000.00 for past pain and suffering, plus $372.78 for past unreimbursable expenses).**

I. **Procedural History**

After initiating her claim, Petitioner filed an Amended Petition (adding further detail and citations to the medical records) on January 6, 2022 (ECF No. 13). Respondent conceded entitlement of Petitioner's left SIRVA in a Rule 4(c) Report (ECF No. 37), and I accordingly issued a corresponding Ruling (ECF No. 38) in September 2023. Just two months later, Petitioner reported that damages could not be informally resolved, *see* Status Report (ECF No. 41). The parties subsequently briefed damages. Petitioner's Motion for a Ruling on the Record on Damages filed Jan. 26, 2024 (ECF No. 42) (hereinafter "Brief"), Respondent's Response filed Mar. 26, 2024 (ECF No. 43); Petitioner's Reply filed Apr. 25, 2024 (ECF No. 44). Afterwards, the parties confirmed their joint stipulation of the reimbursement of $372.78 for past unreimbursable expenses. Accordingly, they only disputed the appropriate award for past pain and suffering. *See* Status Report filed Jan. 7, 2025 (ECF No. 46).

At the end of the January 24, 2025 expedited hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

II. **Authority**

In another recent decision, I discussed at length the legal standard to be considered in determining damages, and how to properly evaluate prior SIRVA compensation determinations within SPU. I fully adopt and hereby incorporate my prior discussion in Section II of *Yodowitz v. Sec'y of Health & Hum. Servs.*, No. 21-370V, 2024 WL 4284926, at *12-22 (Fed. Cl. Spec. Mstr. Aug. 23, 2024).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and

suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.³

### III. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A careful review of the evidence establishes that Ms. Lang suffered a relatively mild SIRVA. She was a seventy-one (71) year-old retiree upon receiving the at-issue flu vaccine in her non-dominant left arm, at a pharmacy in New York on September 4, 2020. Ex. 2 at 3.

Thirty-four (34) days later, on October 8, 2020, a New York orthopedist evaluated her complaint of post-vaccination shoulder pain ranging in severity from 2 – 8/10. An exam found somewhat limited ROM and positive impingement signs. An x-ray of the shoulder was unremarkable. The assessment was impingement syndrome, "no frozen shoulder yet." The orthopedist wrote that Petitioner's shoulder was not frozen yet. The orthopedist administered a steroid injection, and encouraged ice and elevation. Ex. 5 at 10 – 11.

Nearly four months later, on February 1, 2021, Petitioner had a telemedicine encounter with a primary care provider ("PCP") in Florida, chiefly complaining of ongoing shoulder pain "with no help" from the steroid injection. The PCP observed "reasonable range of motion ["ROM"]," recommended Aleve for the pain, and entered a referral for physical therapy ("PT"). Ex. 3 at 59 – 61.

Petitioner subsequently attended fourteen (14) PT sessions over the course of six weeks, concluding on March 26, 2021. Those records reflect ongoing pain and reduced

---

³ *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

ROM without meaningful improvement. She was discharged from PT because she was moving back from Florida to New York, where she would follow up with her orthopedist. *See generally* Ex. 9 at 9 – 45.

At the April 22, 2021 reevaluation, the orthopedist confirmed an ongoing shoulder injury; amended his assessment from impingement syndrome to adhesive capsulitis. Ex. 5 at 13 – 15. The orthopedist ordered an MRI, which was completed six days later and suggested: "mild to moderate glenohumeral arthrosis; small glenohumeral joint effusion with synovitis; minimal undersurface fraying with mild enthesopathic cystic change." Ex. 10 at 6.

On May 6, 2021, the orthopedist assessed Petitioner's left shoulder with both adhesive capsulitis and osteoarthritis, for which he prescribed a course of oral steroids. But the orthopedist *also* assessed cervical radiculopathy - writing: "If symptoms persist, will work up her neck as the source of pain." Ex. 5 at 18-20.[4]

On May 27, 2021, the orthopedist recorded that Petitioner "took the MDP [oral steroid course] which helped as well but after she finished that the pain returns." Ex. 5 at 22. However the orthopedist did not record any plan to refill that medication. Instead, he advised Petitioner to continue PT. *Id.* at 24. And after an x-ray of the cervical spine revealed findings at C4 – C7, he "suggested neuro consult, possible EMG. If not improvement [with PT?] consider pain management consult." *Id.*

There are no further records from the orthopedist or those suggested specialists, other than in association with the eighteen (18) PT sessions (at a different practice, in New York) over a two-month period concluding on June 24, 2021. Those PT records document an ongoing shoulder injury, but also references to the neck and cervical spine. The records document some improvement but ongoing pain, reduced ROM, and trouble sleeping. There is no formal discharge summary or explanation for the end of treatment in June 2021. Ex. 10 at 11 – 57.

In January 2022, Petitioner prepared a sworn statement describing her SIRVA, and reporting ongoing "discomfort and, at times, even mild pain, both at rest and with activity" – specifically kayaking, and lifting and carrying items. Ex. 1 at ¶ 25. Petitioner received some benefit and improvement from PT, but discontinued treatment due to other family and personal issues (further described in the affidavit) taking precedence. *Id.*

---

[4] Petitioner states that she actually received *two* oral steroid course for her SIRVA. Brief at 2, 25, 26; Reply at 5, 7, 11. But she did not include a citation to corroborate any second/ refill pack, and she may have been inadvertently referring to prior medical records for an unrelated injury, see Ex. 5 at 6.

Petitioner submits that $85,000.00 would be a reasonable award for her past pain and suffering, based on direct comparison to specific past decisions awarding that, or close to that figure. Brief at 22 – 27.[5]

Respondent contends that $85,000.00 would be "excessive" based on his review of Ms. Lang's evidence and comparison to her cited cases. Response at 2, 11 – 15. He instead recommends an award "below" the $45,000.00 – $60,000.00.00 awarded in five past cases. *Id.* at 15.[6] But Respondent presents these cases in a table, *id.* at 9 – 11 (commingled with yet four *more* cases) and offers very limited head-to-head comparison to Ms. Lang, *id.* at 13 – 14. He stated that pain and suffering awards are subjective, and in the past, "his recommendation of a specific number has not assisted the special masters in their determinations." *Id.* at 6. And at the January 24, 2025, expedited hearing, upon my questioning, Respondent's counsel stated that he did not have authority to recommend a specific number in Ms. Lang's case.

As discussed at the hearing, I reviewed all of the parties' cited cases, but identified *Foster* as perhaps the best analogy here. The *Foster* petitioner, and Ms. Lang, each suffered a relatively mild SIRVA, which fortunately did not require surgery. Each individual's treatment course began about one month post-vaccination with an orthopedics consult, and an early steroid injection which did not provide significant relief. Each individual received one prescription medication. And in each case, PT was somewhat helpful in improving the SIRVA, and marked the conclusion of formal treatment at about 9 months post-vaccination.

There are some differences, however. As Ms. Lang notes, she attended more PT sessions (32, compared to 16 by the *Foster* petitioner) and she tended to report higher pain ratings. Reply at 10. But Ms. Lang's treatment course also featured a four-month treatment gap (from October 2020 – February 2021) which is not explained by any relief

---

[5] *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $95,000.00 for past pain and suffering); *Rael v. Sec'y of Health & Hum. Servs.*, No. 16-1462V, 2020 WL 901449 (Fed. Cl. Spec. Mstr. Jan. 28, 2020) ($85,000.00); *Russano v. Sec'y of Health & Hum. Servs.*, No. 18-392V, 2020 WL 3639804 (Fed. Cl. Spec. Mstr. June 4, 2020) ($80,000.00); *Kim v. Sec'y of Health & Hum. Servs.*, No. 17-418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018) ($75,000.00); *Attig v. Sec'y of Health & Hum. Servs.*, No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) ($75,000.00).

[6] *Mejias v. Sec'y of Health & Hum. Servs.*, No. 19-1944V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Dec. 5, 2023) (awarding $45,000.00 for past pain and suffering); *Green v. Sec'y of Health & Hum. Servs.*, No. 20-378V, 2023 WL 6444421 (Fed. Cl. Spec. Mstr. Sept. 1, 2023) ($55,000.00); *Aponte v. Sec'y of Health & Hum. Servs.*, No. 20-1031V, 2022 WL 4707180 (Fed. Cl. Spec. Mstr. Sept. 2, 2022) ($60,000.00); *Klausen v. Sec'y of Health & Hum. Servs.*, No. 19-1977V, 2023 WL 2368823 (Fed. Cl. Spec. Mstr. Feb. 2, 2023) ($60,000.00); *Foster v. Sec'y of Health & Hum. Servs.*, No. 21-647V, 2024 WL 1073009 (Fed. Cl. Spec. Mstr. Feb. 6, 2024) ($60,000.00).

from the steroid injection or otherwise – suggesting that her pain was perhaps more manageable than the high pain ratings would indicate. Moreover, the later medical records suggest that notwithstanding Petitioner's conceded SIRVA, her *ongoing* complaints might in part reflect sequelae of cervical radiculopathy (although this question was not fully worked up in the medical records before me). Additionally, Petitioner has not established that her SIRVA impacted any personal or professional obligations. *Compare Foster*, 2024 WL 1073009 (recognizing missed work as a volleyball coach, and difficulty caring for four children including an infant).

Based on my own experience and a comparison to past cases, Ms. Lang should receive an equivalent, or even less, than what was awarded in *Foster*. But Respondent has not adequately defended his position, and Petitioner did a better job overall explaining the basis for her demand, so I will go slightly higher, to **$64,000.00.** (Respondent is more likely in future cases to prevail in arguing for a "lower" award if he actually identifies what that award should be.)

## Conclusion

For the foregoing reasons and based on consideration of the entire record, **Petitioner is awarded a lump sum of $64,372.78 (representing $64,000.00 for past pain and suffering, and $372.78 for past unreimbursable expenses) to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.** This amount represents compensation for all damages that would be available under 42 U.S.C. § 300aa-15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.